

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/09/2010

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DEMAY INTERNATIONAL, LLC | § | Case No. 09-35759-H4-11 |
| | § | |
| Debtor. | § | |

MEMORANDUM OPINION REGARDING OBJECTION TO PROOF OF CLAIM 67 OF
MCCAFFETY ELECTRIC COMPANY, INC.
[Docket No. 196]

### I. INTRODUCTION

This Memorandum Opinion addresses thorny issues related to trade fixtures, removables, mechanic's liens, and leases. At stake is $337,279.00 fought over between the debtor's largest secured creditor and another creditor asserting a mechanic's lien.

### II. FACTUAL AND PROCEDURAL BACKGROUND

1. On August 4, 2009, Demay International, LLC (the Debtor) filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, commencing case number 09-35759. [Docket No. 1].

2. On November 20, 2009, GSL of Ill, LLC (GSL) filed a proof of claim in the total amount of $14,505,220.46. It holds a security interest in virtually all of the Debtor's assets. It is the Debtor's largest creditor. [GSL's Ex. F].

3. On November 20, 2009, McCaffety Electric Company, Inc. (McCaffety) filed a proof of claim in the amount $337,279.00 (the McCaffety Proof of Claim). [McCaffety's Ex. No. 3]. Pursuant to a contract with the Debtor, McCaffety furnished and installed the following: conduit copper wire, light fixtures, panels, breakers, and connections to: (1) equipment (machines and air conditioning), (2) offices, (3) plugs, (4) switches, as well as

incoming primary service and outgoing secondary service to feed low voltage and high voltage panels, and electrical controlling mechanisms (the Electrical Equipment). [Tape Recording, 5/27/10 Hearing at 1:21:43 p.m.]. The Electrical Equipment is replaceable and is replaced within the ordinary course of business. [Tape Recording, 5/27/10 Hearing at 1:33:28 p.m.]. McCaffety installed the Electrical Equipment on property permitted for manufacturing and general industrial use. [GSL's Ex. G, p. 3].

4. The Electrical Equipment sold to the Debtor was valued, at the time of sale, at $748,697.25. [Tape Recording, 5/27/10 Hearing at 1:30:25 p.m.]; [McCaffety's Ex. No. 9]. The resale value of the Electrical Equipment is between $374,348.63 and $561,522.94 (*i.e.*, between fifty percent and seventy-five percent of the Electrical Equipment's value at the time of sale). [Tape Recording, 5/27/10 Hearing at 1:35:00 p.m.]. Therefore, the Electrical Equipment is valued in excess of McCaffety's claim in this case.

5. The McCaffety Proof of Claim is supported by a mechanic's and materialmen's lien affidavit, signed by Robert McCaffety. [McCaffety's Ex. No. 2]. The debt to McCaffety accrued between August of 2008 and January of 2009. [McCaffety's Ex. No 2]. The affidavit contains the following information: (1) a sworn statement of the amount of the claim; (2) the name and address of the Debtor as the reputed owner and employer; (3) a description of the work done; (4) the name and address of the original contractor (*i.e.*, McCaffety); (5) a description of the property relating to the mechanic's lien; and (6) McCaffety's physical address. [McCaffety's Ex. No. 2]. On January 29, 2009, McCaffety sent notice of the lien. [McCaffety's Ex. No. 2]. On February 6, 2009, McCaffety notarized the affidavit. [McCaffety's Ex. No. 2].

6. On September 10, 2009, the Debtor filed its schedules. [Docket No. 58]. In the Debtor's Schedule B - Personal Property, the Debtor lists "Tenant Improvements" under the Type of Property category "[o]ther personal property of any kind not already listed." [Docket No. 58–2, p. 8]. The Debtor listed the current value of the Debtor's interest in that property as "[u]nknown." [McCaffety's Ex. No. 8].

7. When the Debtor filed its bankruptcy case, the Debtor was obligated as a tenant under a real property lease agreement with Dumay Real Estate, LLC (the Landlord)—an entity unrelated to the Debtor—at 80 North FM 30823, Conroe, Texas, where the Debtor operated its business (the Lease Agreement). [GSL's Ex. G].

8. Section E, ¶ 1 of the Lease Agreement, titled Alterations (the Alterations Provision), reads as follows:

> Any physical additions or improvements to the Premises made by Tenant will become the property of Landlord. Landlord may require that Tenant, at the end of the Term and at Tenant's expense, remove any physical additions and improvements, repair any alterations, and restore the Premises to the condition existing at the Commencement Date, normal wear excepted.

[GSL's Ex. G, p. 6].

9. The termination date of the Lease Agreement is May 31, 2022. [GSL's Ex. G, p. 3]. Upon an event of default by the Debtor,[1] the landlord may, among other things, "terminate [the] lease by written notice and sue for damages." [GSL's Ex. G, p. 8].

10. On December 16, 2009, this Court entered an Order Granting Motion to Extend Time to Accept or Reject Executory Contracts—Real Estate Lease (the Extension Order). [Docket No. 141]. The Extension Order extended the time to accept or reject executory

---

[1] Events of default are listed as follows: "(a) failing to pay timely Rent, (b) abandoning or vacating a substantial portion of the Premises, and (c) failing to comply within ten days after written notice with any provision of this lease other than the defaults set forth in (a) and (b) above." [Docket No. 324, Ex. G, p. 8].

contracts to March 2, 2010. [Docket No. 141]. No party-in-interest objected to the Extension Order.

11. On December 22, 2009, the Debtor filed its Motion for Order Approving Bidding Procedures for the Sale of Substantially all of Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances (the Bid Procedures Motion). [Docket No. 124]. On January 11, 2010, McCaffety filed its Limited Objection to the Bid Procedures Motion. [Docket No. 187].

12. On January 13, 2010, the Debtor filed its Objection to Proof of Claim 67 of McCaffety Electric Company, Inc. (the Objection). [Docket No. 196]. The Objection argued that McCaffety's Proof of Claim should be disallowed as a secured claim—thus becoming an unsecured claim—because the claim was not secured by property of the estate as required by 11 U.S.C. § 506(a).

13. On January 13, 2010, McCaffety filed Motion of McCaffety Electric Co., Inc for Relief From the Stay as to Certain Non-Exempt Property Pursuant to 11 U.S.C. § 362(d)(1) or Alternatively Pursuant to 11 U.S.C. § 362(d)(2). [Docket No. 194].

14. On January 21, 2010, this Court approved McCaffety's compromise of the Objection entitled Creditor, McCaffety Electric Company's Proposed Compromise Language to Resolve Its Limited Objection to Debtor's Motion for Order Approving Bidding Procedures (the First Compromise). [Docket No. 208]. The First Compromise states that "[t]he parties agree that the specific assets being transferred under the terms of Schedule A attached to the 'Stalking Horse' bid do not include items upon which McCaffety has a lien . . . if the successful buyer assumes the lease with Dumay Real Estate, the lease is subject to all of McCaffety's lien rights against the leasehold, removables and/or real

property to the extent there are any. In the event . . . the lease . . . is rejected, the rejection does not terminate any lien rights McCaffety has against the removables and/or real property, if any." [Docket No. 208]. Counsel for the Debtor and McCaffety agreed to and signed this order. Importantly, however, the First Compromise referenced Schedule A of the Bid Procedures Motion, not the sale order which would be entered by this Court at a later date (more fully discussed in Finding of Fact No. 19).

15. On February 4, 2010, this Court entered an Order Approving Stalking Horse Bid and Bidding Procedures for the Sale of Substantially All of Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances (the Bid Procedures Order). [Docket No. 257]. Included in the Bid Procedures Order is an Addendum to Asset Purchase Agreement, which adds the following terms, among others, to the Asset Purchase Agreement (the Second Compromise):

> With respect to the dispute related to the extent, priority and validity of the lien and claim of McCaffety Electric Co. (McCaffety), and as outlined in that certain Order dated January 21, 2010 signed by Judge Bohm related to this issue, the Seller shall escrow the sum of $350,000 from the proceeds of the Purchase Price as a source of payment for McCaffety. These funds shall remain in escrow until the nature, extent and secured status of McCaffety's claims have been finally adjudicated and the court has entered an order for distribution of proceeds. **In that regard, some of the Acquired Assets being sold hereunder may include assets upon which McCaffety asserts a lien, such as removables, and such assets are being sold free and clear of any such lien, with McCaffety's lien being transferred to the escrowed funds if it is finally determined that McCaffety holds any such valid lien.** McCaffety may not remove any asset from the property or seek to exercise a lien on any of the Acquired Assets.

[Docket No. 257, p. 47] (emphasis added). The above-highlighted language reflects that the Second Compromise, unlike the First Compromise, contemplates that the Purchaser might well buy assets upon which McCaffety claimed to have a lien. The Court approved

5

the proposed form of the Asset Purchase Agreement (the APA) between the Debtor and Drilling Controls, Inc. (the Purchaser). [Docket No. 257].

16. The APA defines "Acquired Assets" as follows: "<u>Acquired Assets</u>" means all Inventory, Equipment, permits, Records and Warranties, and other assets, including, but not limited to those listed on Schedule A hereto (including any claims and causes of action related exclusively to the post-Closing operation of the Acquired Assets). Acquired Assets does not include the Excluded Assets." [Docket No. 257, p. 8]. The Electrical Equipment is not within the definition of "Excluded Assets." [Docket No. 257, p. 10]. The APA transfers the Acquired Assets from the Debtor to the Purchaser. [Docket No. 257, p. 12 ¶ 1].

17. The APA defines "Equipment" as follows:

> <u>Equipment</u> means all of the listed machinery and equipment, including but not limited to, jigs, dies, tools, tooling (to the extent any such tooling is owned by Seller) together with the intellectual property used in operating the equipment, goods in process and finished goods, furniture, furnishings, **fixtures**, forklifts, construction in progress, spare parts and other tangible personal property owned by Seller.

[Docket No. 257, p. 9] (emphasis added). Moreover, page 2 of Schedule A to the APA, entitled "Inventory, Equipment and Intellectual Property, Permits, Records and Warranties" lists "[f]ixtures, to the extent owned by [the Debtor]." [Docket No. 257, p. 2].

18. On February 8, 2010, the Debtor filed its Motion to Authorize Closing of Sale on All or Substantially All of the Assets of Demay International, LLC, Not in the Ordinary Course of Business (the Motion to Sell). [Docket No. 268].

19. On February 12, 2010, this Court entered an Order for Approval and Authority to Enter Into an Asset Purchase Agreement with the Successful Bidder at Auction and for

Authority to Sell Assets Free and Clear of Liens, Claims, Interests and Other Encumbrances Pursuant to § 363 of the Bankruptcy Code, and to Grant Other Relief (the Sale Order). [Docket No. 268]. A true and correct copy of the APA is attached to this Memorandum Opinion. The Sale Order sold substantially all of the Debtor's assets to the Purchaser.

20. The Sale Order contains the following terms relating to what the Debtor agreed to sell to the Purchaser:

> Pursuant to the terms of the APA, the Debtor has agreed to sell to Purchaser, and Purchaser will purchase from Debtor all of the Acquired Assets **owned, leased or otherwise utilized by Debtor, including, without limitation,** the Acquired Assets and rights defined in the APA (hereinafter, the assets sold pursuant to the APA are collectively referred to as the "Acquired Assets" or the "Assets") for a cash purchase price of $14,600,000.

[Docket No. 283, ¶ 8] (emphasis added).

21. The Sale Order contains the following terms relating to the assumption and assignment of contracts:

> With respect to the [sic] any designated Acquired Contracts to be assumed and assigned, DCI shall designate such contracts prior to closing and the debtor shall file a Motion to assume such designated contracts and establish the related cure costs and assure adequate assurance of future performance by Debtor's assignee DCI as required under Section 365 of the Code.

[Docket No. 283, ¶ 20].

22. The Sale Order contains the following pertinent order language: "**ORDERED** that the sale of Assets from Debtor to Purchaser shall be free and clear of Liens, Claims, interests and other encumbrances pursuant to section 363 of the Bankruptcy Code, with any liens to attach to proceeds, which liens may be paid or disallowed at a subsequent date." [Docket No. 283, p. 8]. The Second Compromise, attached as an addendum to the APA

7

(which in turn was attached to the Sale Order), directed the Debtor to place the sum of $350,000.00 from the proceeds of the sale as a source of payment for McCaffety's lien once the validity of McCaffety's lien was determined. [Docket No. 283–1, p. 26].

23. On February 19, 2010, the Debtor gave notice of its rejection of the Lease Agreement by filing its Motion to Approve Debtor's Acceptance of One Certain Toyota Lease Agreement and to Reject All Other Executory Contracts. [Docket No. 297].[2] On March 23, 2010, the Court concluded that the Debtor's motion is construed as a "Notice of Rejection of Executory Contracts" and approved the rejection of the Lease Agreement in its Order on Debtor's Motion to Amend Debtor's Motion to Approve Debtor's Acceptance of One Certain Toyota Lease Agreement and to Reject All Other Executory Contracts. [Docket No. 321].

24. After the Debtor rejected the Lease Agreement, the Landlord entered into a new lease with the Purchaser. [Tape Recording, 5/27/10 Hearing at 3:59:23 p.m.].

25. On March 11, 2010, GSL filed its Motion of GSL to Intervene in Debtor's Objection to the Claim of McCaffety (the Motion to Intervene). [Docket No. 317].

26. On March 29, 2010, McCaffety filed Creditor, McCaffety's Response to Docket No. 196, Debtor's Objection to the Claim of McCaffety, and Docket No. 317, Motion of GSL to Intervene in Debtor's Objection (the Response to the Motion to Intervene). [Docket No. 323]. In the Response to the Motion to Intervene, McCaffety does not oppose GSL's intervention. [Docket No. 323, ¶ 33].

---

[2] To avoid any confusion, this particular motion requested the Court to authorize the assumption of a lease agreement for a certain Toyota, not the assumption of the Lease Agreement with the Landlord. In fact, Paragraph 8 of this motion expressly sets forth that except for assuming the Toyota lease, all other executory contracts and leases are to be rejected.

8

27. On March 30, 2010, GSL filed Motion of GSL for Summary Judgment Disallowing the Secured Claim # 67 filed by McCaffety (the Summary Judgment Motion). [Docket No. 324]. The Summary Judgment Motion argues that McCaffety's lien is not attached to property of the estate because: (1) the leasehold owned by the Debtor was terminated when the Lease Agreement was rejected; and (2) the improvements made to the leased property are owned by the landlord by virtue of the Lease Agreement. [Docket No. 324, ¶¶ 22–23].

28. On April 16, 2010, McCaffety filed Creditor, McCaffety's Response to Docket No. 324, Motion of GSL for Summary Judgment Disallowing the Secured Claim # 67 of McCaffety (the Response to the Summary Judgment Motion). [Docket No. 349]. In the Response to the Summary Judgment Motion, McCaffety argues that McCaffety's lien was not unsecured because: (1) the Bid Procedures Order transferred McCaffety's lien against the leasehold to the escrowed funds prior to any rejection; and, in the alternative, (2) the Debtor has admitted that the Electrical Equipment was property of the estate. [Docket No. 349, ¶¶ 9–14].

29. On April 21, 2010, this Court held a hearing on the Motion to Intervene, the Summary Judgment Motion, the Objection, and the responses thereto. At the April 21 hearing, counsel for GSL argued that the Lease Agreement terminated in two ways: (1) on December 2, 2009, it was automatically rejected under § 365; and (2) the Lease Agreement was rejected after the Sale Order. [Tape Recording, 4/21/10 Hearing at 10:50:09 a.m.].

30. On April 21, 2010, this Court entered an Order Granting Motion of GSL to Intervene in Debtor's Objection to the Claim of McCaffety. [Docket No. 355].

9

31. On April 23, 2010, McCaffety filed a supplemental brief. [Docket No. 357]. On April 26, 2010, GSL also filed a supplemental brief. [Docket No. 359].

32. On May 27, 2010, the Court held a hearing on the Objection and all responses thereto. There, the Court orally denied the Summary Judgment Motion. [Tape Recording, 5/27/10 Hearing at 9:36:15 a.m.]. The following persons testified at the May 27, 2010 Hearing: Robert McCaffety, general manager and part-owner of McCaffety, and John Gross, president of the Landlord. [Tape Recording, 5/27/10 Hearing at 1:12:27 p.m.]; [Tape Recording, 5/27/10 Hearing at 3:49:42 p.m.].

### III. CREDIBILITY OF WITNESSES

At the hearing held on May 27, 2010, this Court heard testimony from Robert McCaffety, general manager and part-owner of McCaffety, and John Gross, president of the Landlord. The Court's assessment of the credibility of each witness is set forth below.

**A.    Robert McCaffety**

The Court finds Robert McCaffety to be very credible on all issues about which he testified. He testified credibly about what Electrical Equipment McCaffety provided to the Debtor and as to the resale value of that equipment.

**B.    John Gross**

The Court finds John Gross to be very credible on all issues about which he testified.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a).[3] This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (N), & (K). Additionally, this proceeding is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)* Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1409.

### B. The Electrical Equipment was Property of the Estate at the Time of the Sale Order.[4]

In the Summary Judgment Motion,[5] GSL argues that because the Electrical Equipment was a "Tenant Improvement" under the Lease Agreement, the Electrical Equipment is the property of the Landlord; therefore, McCaffety's lien never attached to property of the estate. In support of this argument, GSL cites the Alterations Provision in the Lease Agreement:

> Any physical additions or improvements to the Premises made by Tenant will become the property of Landlord. Landlord may require that Tenant, at the end of the Term and at Tenant's expense, remove any physical additions and

---

[3] Reference to a "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure. Any reference herein to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (*i.e.* §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" refers to the Federal Rules of Civil Procedure.

[4] The validity of McCaffety's mechanic's lien will be discussed *infra*.

[5] GSL filed a motion for summary judgment, [Finding of Fact No. 27], which this Court denied.

> improvements, repair any alterations, and restore the Premises to the condition existing at the Commencement Date, normal wear excepted.

[Finding of Fact Nos. 8 & 28]. This Court disagrees with GSL's interpretation of the Alterations Provision.

Texas contract law applies because the dispute arose in Texas, it involves a debtor with substantial operations in the state, the leased property is located in Texas, and McCaffety is a company doing business in Texas. [Finding of Fact Nos. 1, 3 & 7]. *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 838 (S.D. Tex. 1993) ("[T]he rights and duties of the parties are determined by the local law of the state or country that has the most significant relationship to the transaction and the parties.").

Under Texas contract law, the interpretation of "physical additions or improvements" in an alterations clause included within a real estate lease agreement focuses on the objective intent of the parties and whether the alteration by the lessee was an improvement, fixture, or trade fixture. *See C.W. 100 Louis Henna, Ltd. v. El Chico Rests. Of Tex., L.P.*, 295 S.W.3d 748, 753–54 (Tex. App.—Austin 2009, no pet.); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (concluding that when reviewing a lease agreement, the objective intent of the parties as expressed in the contract governs); *Alexander v. Cooper*, 843 S.W.2d 644, 646 (Tex. App.—Corpus Christi 1992, no writ). "[The] [s]tatus of a fixture as well as intent of the parties are questions of fact to be determined by [this Court]." *Crest Suppy v. Wolf*, No. 01-93-00088-CV, 1993 Tex. App. LEXIS 3018, at *5 (Tex. App.—Houston [1st Dist.] Nov. 10, 1993, no writ).

Trade fixtures are excluded from the definition of physical additions and improvements. *Sonnier v. Chisholm-Ryder Co.*, 909 S.W.2d 475, 479 (Tex. 1995); *see also Crest Supply*, 1993 Tex. App LEXIS 3018 at *7 (concluding that a physical addition and improvement clause that

12

stated all physical additions and improvements became property of the landlord did not include trade fixtures). Personalty becomes a fixture when it "become[s] so related to particular real property that an interest in them arises under [real property law]." Tex. Bus & Com. Code Ann. § 9.102(a)(41) (Vernon 2002). Trade fixtures include:

> such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, *and which can be removed without material or permanent injury to the [property]*.

*Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 892 (Tex. App.—Texarkana 2009, pet. denied) (quoting *Boyett v. Boegner*, 746 S.W.2d 25, 27 (Tex. App.—Houston [1st Dist.] 1988, no writ); *see also Ashford Com, Inc. v. Crescent Real Estate Funding III, L.P.*, No. 14-04-00605-CV, 2005 WL 2787014, at *9 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (citing *Connelly v. Art & Gary, Inc.*, 630 S.W.2d 514, 515 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.)). A tenant may generally take away trade fixtures from the property at the termination of the lease unless there is an express contract provision to the contrary. *Alexander*, 843 S.W.2d at 646.

This Court concludes that the Electrical Equipment is a trade fixture. *Jim Walter Window Components v. Turnpike Distrib. Ctr.*, 642 S.W.2d 3, 5 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (concluding that components of an electrical system are trade fixtures); *Granberry v. Tex. Pub. Serv. Co.*, 171 S.W.2d 184, 186 (Tex. Civ. App.—Amarillo 1943, no writ). Even disregarding prior precedent that electrical equipment is a trade fixture, the Electrical Equipment here fits within the definition of a trade fixture. First, the Debtor installed the Electrical Equipment necessarily to carry on its trade at the leased property. [Finding of Fact No. 3]. Second, uncontroverted and credible testimony indicated that removal of the Electrical Equipment would occur with no damage to the property. [Finding of Fact No. 3]. Accordingly,

the Electrical Equipment is a trade fixture. Indeed, the Electrical Equipment does not fall within the purview of the Alterations Provision; thus, the Electrical Equipment was property of the Debtor—not the property of the Landlord—upon its installation. Therefore, the Electrical Equipment was property of the estate as of the date of the Sale Order.

**C.    McCaffety has a lien on the escrowed funds.**

    1.    <u>McCaffety has a valid statutory mechanic's lien.</u>

A party has a valid statutory mechanic's lien if "the person labors, specially fabricates the material, or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent." Tex. Prop. Code § 53.021 (Vernon 2007). In order to perfect a lien, a party must "file an affidavit with the county clerk of the county in which the property is located . . . not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues." Tex. Prop. Code §§ 53.051–53.052 (Vernon 2007). This affidavit must include, in pertinent part, the following: (1) the signature of the person asserting the lien; (2) a sworn statement as to the dollar amount of the claim; (3) a general description of the work and materials furnished; (4) the name and address of the person whom the claimant asserts the lien against; (5) a description of the property where the materials and services were furnished; (6) the claimant's address; and (7) notice within five days of the filing of the affidavit. Tex. Prop. Code § 53.054 (Vernon 2007).

Here, McCaffety has a properly perfected statutory mechanic's lien. First, McCaffety provided labor and materials to the Debtor. [Finding of Fact No. 3]. Second, McCaffety properly notified the Debtor that it was seeking a statutory mechanic's lien. [Finding of Fact No. 5]. Lastly, McCaffety timely filed a mechanic's lien affidavit with the County Clerk of Montgomery County, Texas that contained the following information: (1) a sworn statement of

14

the amount of the claim; (2) the name and address of the Debtor as the reputed owner and employer; (3) a description of the work done; (4) name and address of the original contractor (*i.e.*, McCaffety); (5) a description of the property relating to the mechanic's lien; and (6) McCaffety's physical address. [Finding of Fact No. 5]. Moreover, the affidavit was properly notarized. [Finding of Fact No. 5]. Therefore, because McCaffety satisfied all of the statutory requirements to attach and perfect a statutory mechanic's lien, its lien is valid and properly perfected.

   2.   McCaffety's mechanic's lien attached to the leasehold estate and to the removables.

A mechanic's and materialmen's lien attaches to leaseholds, removables and leasehold improvements.[6] Tex. Prop. Code § 53.022 (Vernon 2007). Removables include light fixtures, gears, electrical panels, lamps, wire, and electrical wire. *See First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 266–67 (Tex. 1974); *In re Orah Wall Fin. Corp.*, 84 B.R. 442, 447 (Bankr. W.D. Tex. 1986) (citing *Parkdale State Bank v. McCord*, 428 S.W.2d 121 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.)). When a mechanic's lien attaches, it attaches to the interest of the person contracting for construction so that when a lessee contracts for construction, the lien attaches to the leasehold estate. *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 805 (Tex. 1978); *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 835 (Tex. App.—Fort Worth 2006, no pet.). Accordingly, as of the approval of the APA, McCaffety's lien attached to both the Electrical Equipment and the leasehold estate.

---

[6] McCaffety, however, does not have a valid constitutional mechanic's lien because it was not in privity of contract with the Landlord. TEX. CONST. art. XVI, § 37 ("Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefore."); *Gibson v. Bostick Roofing & Sheet Metal*, 148 S.W.3d 482, 492 (Tex. App.—El Paso 2004, no pet) (concluding that the Texas Constitution does not provide a lien to parties who have not been in privity of contract with the owner); *Ralph M. Parsons Co. v. South Coast Supply Co. (In re A & M Operating Co.)*, 182 B.R. 997, 1004 (E.D. Tex. 1995).

    3.    <u>McCaffety has a lien on the escrowed funds because the Electrical Equipment falls within the definition of "Acquired Assets" pursuant to the APA.</u>

As discussed *supra*, Texas contract law "examine[s a contract] as a whole to ascertain the true intent of the parties." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) (citing *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 158 (Tex. 1999)). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "A court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole. Moreover, each part of the contract should be given effect." 4 EDITH SCHAFFER, TEXAS JURISPRUDENCE PLEADING & PRACTICE FORMS § 72:2 (2d ed. 2002). If the written contract can be given a "definite or certain legal meaning, then it is not ambiguous." *CBI Indus.*, 907 S.W.2d at 520 (internal citations omitted).

    *i.*    *The unambiguous terms of the Sale Order and the APA indicate that the Electrical Equipment was sold to the Purchaser.*

The unambiguous terms of the Sale Order and the APA indicate that the Debtor sold the Electrical Equipment to the Purchaser. Indeed, the APA defines "Acquired Assets" as follows: "<u>Acquired Assets</u>" means all, Inventory, Equipment, permits, Records and Warranties, and other assets, including, but not limited to those listed on Schedule A hereto (including any claims and causes of action related exclusively to the post-Closing operation of the Acquired Assets). Acquired Assets does not include the Excluded Assets." The Electrical Equipment is not among the "Excluded Assets." [Finding of Fact No. 16]. Moreover, The APA defines "Equipment" as follows:

> <u>Equipment</u> means all of the listed machinery and equipment, including but not limited to, jigs, dies, tools, tooling (to the extent any such tooling is owned by Seller) together with the intellectual property used in operating the equipment, goods in process and finished goods, furniture, furnishings, **fixtures**, forklifts,

16

construction in progress, spare parts and other tangible personal property owned by Seller.

[Finding of Fact No.17]. Moreover, the Sale Order reads as follows:

Pursuant to the terms of the APA, the Debtor has agreed to sell to Purchaser, and Purchaser will purchase from Debtor all of the Acquired Assets **owned, leased or otherwise utilized by Debtor, including, without limitation,** the Acquired Assets and rights defined in the APA (hereinafter, the assets sold pursuant to the APA are collectively referred to as the "Acquired Assets" or the "Assets") for a cash purchase price of $14,600,000.

[Finding of Fact No. 20].

Not only does the Electrical Equipment fall within the catchall language of "Acquired Assets," (*i.e.*, "and other assets, including, but not limited to those listed on Schedule A") and the catchall language used in the Sale Order, it also falls within the category of "fixture," present in both Schedule A of the APA and within the definition of "Equipment" in the APA. [Finding of Fact Nos. 16–18]. While it is true that a trade fixture is "to be distinguished from other fixtures attached to the property," Texas case law "treats trade fixtures as a subset, or a special type, of fixture—in order for an article of personalty to be a trade fixture, it must first be a fixture generally." *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 130 (Bankr. W.D. Tex. 2003) (quoting *Jim Walter*, 642 S.W.2d at 5); *see also Moskowitz v. Calloway*, 178 S.W.2d 878, 880 (Tex. Civ. App.—Texarkana 1944, writ ref'd w.o.m.); *Nine Hundred Main Inc. v. City of Houston*, 150 S.W.2d 468, 471 (Tex. Civ. App.—Galveston 1941, writ dism'd judgm't cor.). Therefore, because the Electrical Equipment was as a fixture pursuant to the Sale Order and the APA—while also falling within the catchall language of the Sale Order and the APA—the Debtor sold the Electrical Equipment to the Purchaser.

> ii. *The Sale Order and the APA indicate that the true intent of the parties was to sell the Electrical Equipment to the Purchaser.*

Even if this Court is incorrect in concluding that the Sale Order and the APA explicitly sold the Electrical Equipment to the Purchaser, the true intent of the parties (*i.e.*, the Debtor and the Purchaser) was to sell all of the assets necessary for the Purchaser to continue to use the Debtor's leased property for manufacturing purposes. Indeed, not only did the Purchaser purchase substantially all of the Debtor's assets (including manufacturing equipment, intellectual property, permits, records and customer sales orders), but it has also entered into a new real estate lease with the Landlord, utilizing the Debtor's old property. [Finding of Fact Nos. 19 & 24]. The idea that the Purchaser would purchase from the Debtor everything necessary to continue the Debtor's operations, yet fail to purchase the Electrical Equipment necessary to operate, leads to an absurd result. Therefore, the Debtor sold the Electrical Equipment to the Purchaser because even if the explicit terms of the lease do not allow for the sale of the Electrical Equipment to the Purchaser, the true intent of the parties was for the Purchaser to allow for just that.

4. <u>The Lease Agreement did not terminate prior to the Sale Order.</u>

At the April 21, 2010 hearing, counsel for GSL argued that pursuant to 11 U.S.C. § 365, the Lease Agreement terminated by operation of law on December 2, 2009, and, therefore, McCaffety's mechanic's lien had terminated with it. This Court disagrees. On December 16, 2009, this Court entered the Extension Order, extending the deadline to assume or reject the Lease Agreement to March 2, 2010. [Finding of Fact No. 10]. No party-in-interest objected to the Extension Order. [Finding of Fact No. 10].

The Supreme Court has recently held that even if a bankruptcy court enters an order that contains a legal error, it is still enforceable and binding if the court gave notice to the party of the

18

order and the party failed to object or appeal. *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1380 (2010). Indeed, absent a Rule 60(b) motion, "'the finality of [a] Bankruptcy Court's orders following the conclusion of direct review' would 'stan[d] in the way of challenging [their] enforceability." *Id.* (quoting *Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2198 (2009)). Here, while the Extension Order may have been legally incorrect, no parties objected to or appealed the Extension Order. [Finding of Fact No. 10]. Therefore, the Extension Order is enforceable and binding on all of the parties.

5. <u>McCaffety has a valid lien on the escrowed funds.</u>

On February 4, 2010, this Court entered the Bid Procedures Order. [Finding of Fact No. 16]. Included in the Bid Procedures Order is the Second Compromise, which reads as follows:

> With respect to the dispute related to the extent, priority and validity of the lien and claim of McCaffety Electric Co. (McCaffety), and as outlined in that certain Order dated January 21, 2010 signed by Judge Bohm related to this issue, the Seller shall escrow the sum of $350,000 from the proceeds of the Purchase Price as a source of payment for McCaffety. These funds shall remain in escrow until the nature, extent and secured status of McCaffety's claims have been finally adjudicated and the court has entered an order for distribution of proceeds. **In that regard, some of the Acquired Assets being sold hereunder may include assets upon which McCaffety asserts a lien, such as removables, and such assets are being sold free and clear of any such lien, with McCaffety's lien being transferred to the escrowed funds if it is finally determined that McCaffety holds any such valid lien.** McCaffety may not remove any asset from the property or seek to exercise a lien on any of the Acquired Assets.

[Finding of Fact No. 15] (emphasis added).

Moreover, the Sale Order contains the following pertinent order language: "**ORDERED** that the sale of Assets from Debtor to Purchaser shall be free and clear of Liens, Claims, interests and other encumbrances pursuant to section 363 of the Bankruptcy Code, with any liens to attach to proceeds, which liens may be paid or disallowed at a subsequent date." [Finding of Fact No.

19

22]. Therefore, because McCaffety is found to have had a lien on property sold pursuant to the Sale Order and the APA, its lien has transferred to the $350,000.00 held in escrow.

## V. CONCLUSION

Because McCaffety's lien on the Electrical Equipment is valid and enforceable, and because the Electrical Equipment was property of the Debtor's estate prior to being sold, McCaffety therefore holds a secured claim in this case. And, because this Court has found that the value of the Electrical Equipment is substantially greater than the amount of McCaffety's claim, McCaffety is a **fully** secured creditor in this case. [Finding of Fact Nos. 3 & 4]. Accordingly, McCaffety's lien of $337,279.00 attached to the $350,000.00 in escrow, and McCaffety is now entitled to receive $337,279.00.

For all of the reasons set forth herein, the Objection is overruled in its entirety. An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 9th day of June, 2010

Jeff Bohm
United States Bankruptcy Judge